IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES VANEY QUEEN,<br><br>    Petitioner,<br><br>    v.<br><br>ANTHONY C. NEWLAND, Warden,<br><br>    Respondent. | No. C 99-21067 EJD (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

Petitioner, a state prisoner incarcerated at Corcoran State Prison, has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction. For the reasons set out below, the petition will be denied.

**BACKGROUND**

I.  Procedural

In 2003, the Court granted Respondent's motion to dismiss the petition as untimely. The Ninth Circuit vacated the dismissal and remanded the matter for further development of the record with respect to Petitioner's claim that he was entitled to equitable tolling. The Court reopened the case and appointed counsel. Respondent's renewed motion to dismiss as untimely was granted in 2008, but the Court subsequently granted Petitioner's motion to reconsider on grounds of a change in the law. A new order for Respondent to show cause

1  why the petition should not be granted was issued. Counsel had been appointed for the
2  limited purpose of representing Petitioner in the equitable tolling matter, so was released
3  from his duty of representation. Petitioner's subsequent motions for appointment of counsel
4  were denied. The Court set a schedule for briefing the case on the merits; Respondent has
5  filed an answer and memorandum of points and authorities in support of it. Petitioner has not
6  filed an optional traverse.

II.   Factual

In 1989, Petitioner was convicted of first degree murder, see Cal. Penal Code § 187, enhanced for personal use of a firearm, see id. at § 12022.5. People v. Queen, No.A048470, California Court of Appeal, First Appellate District (Aug. 2, 1991) (hereafter "Ex. C-4").[1] He was sentenced to a prison term of 25 years to life with possibility of parole, plus a two-year consecutive sentence for use of the weapon. (Id. at 4.)

The California Court of Appeal set forth the following summary of facts:

> On April 24, 1988, [Petitioner] shot and killed David Dawson outside of the Regency Cinema in Stockton. On that day, the theater was showing the movie Colors, which featured clashes among police officers and gangs in the Los Angeles area. [Petitioner], a member of a Los Angeles gang called the Bloods, viewed the movie with two fellow gang members, Andrew Jones and Herman St. Aimie. After the movie, [Petitioner] saw Dawson and Ricki Tillmon waiting in line to see the next showing. [Petitioner] understood that both of them were members of a gang called the Crips. Among other things, the film showed members of a fictionalized Crip gang killing a member of a fictionalized Blood gang in a drive-by shooting. The movie does not show members of the Blood gang retaliating for these attacks.
>
> On the way to their car, [Petitioner] and his friends exchanged stares with Dawson and Tillmon. After reaching the car, [Petitioner] "reached underneath his shirt as if to pull something out from under his shirt and motioned as if to place whatever he pulled out onto the floorboard of the vehicle." [Petitioner] then drove slowly past Dawson and Tillmon, and the parties made signs towards each other and exchanged further stares. At this point, [Petitioner] stopped the car and backed up into an empty parking space near Dawson and Tillmon. [Petitioner] exited the car, approached Dawson, and confronted him. Dawson did not respond. At about the same time, Jones and St. Aimie exited the car and confronted Tillmon. After an exchange of words, St. Aimie hit Tillmon, and the two began to fight. Jones joined the fight.

---

[1] Citations to "Ex." are to exhibits in the state court record lodged with the court by the Attorney General in support of the answer.

> As the fight continued, [Petitioner] said to Letricia Gardner, who had been waiting with Dawson to see the movie, "'You wait a minute. I have something for you.'" Queen then went to the car, reached down into the driver's seat, pulled out a revolver, and walked to the front of the car. Dawson was running away with his back to [Petitioner] when [Petitioner] fired the gun. The bullet struck Dawson in the upper back and exited from his neck. He died from the wound.
>
> At trial, [Petitioner] argued that he shot Dawson in self-defense. He testified that, after obtaining the gun, he discovered Dawson had joined the fight and was on St. Aimie's back. St. Aimie threw Dawson to the ground. Dawson looked at [Petitioner] from the ground and reached into his jacket with his right arm. [Petitioner] told Dawson not to pull anything from his jacket. Dawson then stood up and started walking away from [Petitioner]. With his hand still in his waist, Dawson began to turn towards [Petitioner]. Believing that Dawson was going to produce a weapon, [Petitioner] shot Dawson. [Petitioner] did not intend to kill Dawson, but merely to stop him by shooting him in the leg.
>
> After the shooting, [Petitioner], Jones, and St. Aimie returned to the car and, with [Petitioner] at the wheel, drove away. [Petitioner] was smiling as he left and made some sort of hand sign. [Petitioner] returned to Los Angeles the same day. He then left the state. The police arrested [Petitioner] in Mississippi some time after the shooting. The prosecution charged [Petitioner] with murder and personal use of a firearm.
>
> After a change of venue on [Petitioner's] motion, jury trial commenced in Contra Costa County on August 22, 1989. In addition to presenting eyewitness testimony, the prosecution, over [Petitioner's] objection, showed the jury <u>Colors</u>. The prosecution also presented, over [Petitioner's] objection, an expert witness on gangs who testified regarding the conflict between the Crips and the Bloods. The jury found [Petitioner] guilty of first degree murder and that he had used a firearm in committing the offense. After denying [Petitioner's] motion for new trial, the trial court sentenced him on the murder conviction to prison for 25 years to life with possibility of parole, and imposed a two-year consecutive sentence for the use of a weapon.

(Ex. C-4 at 1-4.)

## **DISCUSSION**

I.   Standard of Review

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Williams, 529 U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

Even if the state court decision was either contrary to or an unreasonable application of clearly established federal law, within the meaning of AEDPA, habeas relief is still only warranted if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Penry v. Johnson, 532 U.S. 782, 796 (2001)

1  (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

2  Lastly, a federal habeas court may grant the writ it if concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. Id. §2254(e)(1).

II. Legal Claims and Analysis

Petitioner alleges the following claims as grounds for federal habeas relief: (1) trial counsel was ineffective in specified ways; (2) appellate counsel was ineffective; (3) the trial court erred in admitting certain evidence; and (4) the prosecutor engaged in misconduct in closing argument.

A. Ineffective Assistance of Trial Counsel

Petitioner contends that his trial counsel was ineffective in not (1) calling witnesses for the defense; (2) meaningfully challenging the prosecution's case; and (3) making proper objections to testimony by a gang expert.

1. Standard

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner first must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88. Secondly, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

It is unnecessary for a federal court considering a habeas ineffective assistance claim

to address the prejudice prong of the Strickland test if the petitioner cannot even establish incompetence under the first prong. Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998). Similarly, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. Strickland, 466 U.S. at 697.

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S.Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Although a court considering an ineffective assistance claim may not hypothesize reasons for counsel's decisions that contradict available evidence of the actual reasons, the "strong presumption" means that in the absence of such evidence, hypothetical strategic considerations may be adduced to conclude that counsel was not ineffective. Id. at 790.

The standards of both § 2254(d) and Strickland are "highly deferential . . . and when the two apply in tandem, review is doubly so." Id. at 788 (internal quotation marks and citations omitted).

### 2. Failure to Call Witnesses

Petitioner contends that "there were available crucial defense witnesses . . . defense counsel failed to call . . . ." (Pet. at 20.) Petitioner does not, however, say what witnesses counsel failed to call, except to contend that counsel should have called an expert witness on gangs to rebut the testimony of the prosecution expert. (Id.) And he does not provide even an allegation of what such an expert would say, and there is no evidence on the point in the record. See Cullen v. Pinholster, 131 S.Ct. 1388, 1399 (2011) (review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits). There thus is nothing in the record to overcome the "strong presumption" of effective assistance. This claim is without merit.

### 3. Failure to Challenge the Prosecution's Case

Petitioner lists five complaints under this heading. First, he complains that "counsel

1 failed to attack Pruitt's testimony where he stated that Petitioner's partner had pulled out
2 weapons, while verbally assaulting the victim's group. RT 737."  There is no further
3 explanation of the claim.

4       The transcript citation that Petitioner provides in the portion of the petition quoted
5 above is to part of counsel's cross-examination of a prosecution witness named Willie Pruitt,
6 a friend of the victim and a Crip.  Pruitt testified to an incident about ten days before the
7 shooting when, he claimed, Petitioner and a friend displayed guns.  (Ex. B-3 at 727-28.)  In
8 fact, counsel conducted an extensive and effective cross-examination of Pruitt, impeaching
9 him with his inconsistent statements to an investigator, his inconsistent statement on direct as
10 to his having a gun himself, his gang involvement, his prior convictions, and his deal with the
11 prosecution.  Id. at 731-748.  That is, the record shows that counsel in fact vigorously
12 attacked Pruitt's testimony.  He was not ineffective on this point.

13       Petitioner next contends that "counsel failed to attack the issue concerning the people
14 whom were present at the time of the incident." (Pet. at 20.)  This in incomprehensible and
15 thus cannot be a basis for relief.

16       Thirdly, Petitioner contends that counsel failed to emphasize that the victim and his
17 friends "threw up signs," that Petitioner only asked "what's up," and that the fact he fired
18 only one shot was consistent with his contention that he intended to disable the victim, not
19 kill him. (Pet. at 21.)  As Respondent points out, that the victim and his friends may have
20 taunted Petitioner does not excuse the killing, and emphasis on that point probably would not
21 have been wise.  Counsel did emphasize that Petitioner fired only one shot, and stopped
22 firing once the victim was down.  (Ex. B at 2143.)  This claim is without merit.

23       Petitioner also contends that counsel "failed to attack the issue that the victim's sister
24 attempted to deny she had a purse when she went over to the victim," this being significant
25 because the sister might have put the victim's gun in her purse, thereby making it appear that
26 the victim was not armed and that Petitioner's shooting was not self-defense. (Pet. at 21.)
27 There is nothing in the record that would support Petitioner's contention that the sister had a
28 purse with her when she went to the victim, and she testified that she did not. (Ex. B-3 at

610.) There thus is no evidentiary basis in the record for this claim.

Finally, Petitioner contends that counsel "failed to raise doubt as to Petitioner being a gang member." (Id.) Again, there is nothing in the record upon which counsel could have based such an argument, and Petitioner does not say how it might have been done. This claim is without merit.

### 4. Failure to Make Certain Objections to Expert Testimony

Petitioner contends that his counsel should have objected to the testimony of the prosecution's gang expert on grounds that the testimony was inadmissible under section 1101 of the California Evidence Code.[2] Petitioner raised the section 1101 contention on direct appeal, but the court of appeal rejected it as not preserved, saying:

> [Petitioner] also contends that the response dealing with gang members' predisposition to violence against rival gang members, "and the many other questions which in reality related only to character and predisposition, were improper under . . . § 1101." As to the predisposition question, [Petitioner] did not make this objection in the trail court. On the contrary, his counsel stated that the expert could properly testify that the Bloods and Crips dislike each other and have perpetrated violence against each other, and objected to the predisposition question only on the grounds that it was cumulative and more properly for argument rather than subject to expert opinion. Accordingly, we will not review it on appeal.

(Ex. C-4 at 10 n.8 [citations omitted.].)

Counsel fought hard to restrict the gang expert's testimony. Prior to trial, counsel

---

[2] § 1101. Evidence of character to prove conduct

(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness.

objected in limine to use of the expert without a prior voir dire to determine expertise and the nature of the expert's testimony. (Ex. B-10 (motions transcript) at 1-19). The court permitted the prosecutor to make limited reference to the expert in opening statement, and held that it would hear voir dire from the witness before he would be permitted to testify. (Id. at 19.) At trial, the court devoted two days to the voir dire of the witness, hearing direct and cross-examination and entertaining both specific and general objections from counsel for Petitioner. (Ex. C-4 at 13 n.9.) The transcript of this examination extends to nearly 300 pages in the record. (Ex. B-5 at 1102-1372.)

It is not ineffective for counsel to fail to take a futile action. See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (counsel cannot be found to have been ineffective for failing to file a meritless motion). Here, counsel did not object on section 1101 grounds, but the evidence clearly went to motive, one of the exceptions to the section 1101 rule of exclusion. It was undisputed that the parties were from two hostile gangs, that they flashed gang signs, and that they "mad dog stared" at each other. There thus was a strong foundation for the expert's testimony about gang culture, the animosity between the Bloods and Crips, and the ethos of violent retaliation governing those gangs, all going to motive. An objection on section 1101 grounds would have been futile, so counsel's failure to make it was not deficient performance, and the failure did not prejudice Petitioner.

B.     Ineffective Assistance of Appellate Counsel

Petitioner contends that his appellate counsel was ineffective in failing to contend that the evidence was insufficient to support the conviction and in proceeding without a complete transcript.

1.     Standard

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland, 466 U.S. 668. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.

1 1986). A defendant therefore must show that counsel's advice fell below an objective
2 standard of reasonableness and that there is a reasonable probability that, but for counsel's
3 unprofessional errors, he would have prevailed on appeal. Miller, 882 F.2d at 1434 & n.9.

4 Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue
5 requested by defendant. Jones v. Barnes, 463 U.S. 745, 751-54 (1983). The weeding out of
6 weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.
7 Miller, 882 F.2d at 1434. Appellate counsel therefore will frequently remain above an
8 objective standard of competence and have caused his client no prejudice for the same
9 reason--because he declined to raise a weak issue. Id.

10        2.    Analysis

11 There is nothing in the record that would indicate that the transcript used by appellate
12 counsel was not complete, so that claim will be summarily denied.

13 As to Petitioner's other ground, there was evidence at trial from eyewitnesses that he
14 went to his car to retrieve his weapon and then used it to shoot the unarmed victim in the
15 back. (Ex. C-4 at 14 (court of appeal opinion, summarizing evidence).) Because a rational
16 jury could have concluded form this that Petitioner committed first degree murder, counsel's
17 failure to raise the issue was not ineffective and did not prejudice Petitioner.

18    C.   Admission of Evidence

19 Petitioner contends that the trial court erred when it allowed the jury to see the movie
20 "Colors," allowed examination of Petitioner's friend, Herman St. Aimie, about his
21 knowledge of guns, and admitted certain testimony by the gang expert.

22        1.    Exhaustion

23 Petitioner did not raise any of the evidentiary issues in federal terms in state court, so
24 to the extent his factual allegations are sufficient to state federal claims, those claims are
25 unexhausted. See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (state courts must be
26 alerted to the fact that prisoners are asserting claims under the United States Constitution in
27 order to be given the opportunity to correct alleged violations of federal rights). A federal
28 district court may not grant habeas relief to a state prisoner on a ground that was not first

exhausted in state court, see 28 U.S.C. § 2254(b)(1), but the court may deny claims on the merits even if they are unexhausted. See 28 U.S.C. § 2254(b)(2). That will be done here.

### 2. Standard

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999). But "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. [The Supreme Court therefore has] defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990).

Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. Henry, 197 F.3d at 1031; Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991). While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. Jammal, 926 F.2d at 919 (citing Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983). Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process, however. Id. at 920.

### 3. Movie

The trial court permitted the prosecutor to show the movie "Colors," which Petitioner had just seen when he shot the victim. The entire film was shown because defense counsel asked that it be, if it were to be shown at all. (Ex. C-4 at 5 n.3.) The court gave a limiting instruction, telling the jury that the movie was fiction and could be considered only for its effect, if any, on the viewer. (Ex. B-7 at 1675-76.)

On direct appeal, Petitioner contended that allowing the movie into evidence was an abuse of discretion under section 352 of the California Evidence Code, a section which

requires exclusion of evidence whose prejudicial effect outweighs its probative value.[3] He makes the same contentions here. (Pet. at 14-22.) This is purely a state-law claim, and cannot be the basis for federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal habeas unavailable for violations of state law or for alleged error in the interpretation or application of state law).

In addition, the jury could have drawn a permissible inference from the movie – that it encouraged a violent mood in Petitioner, and that he was motivated to attack a Crip by the shameful failure of the members of his gang in the movie to retaliate against Crips who had attacked them. Furthermore, the jury was given a limiting instruction, and jurors are presumed to follow their instructions. See Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997) (juries are presumed to follow a court's limiting instructions with respect to the purposes for which evidence is admitted). Petitioner has done nothing to overcome that presumption. For these reasons, showing the movie did not render the trial fundamentally unfair, and there was no due process violation. This claim is without merit.

4. St. Aimie

On cross-examination by the defense, Petitioner's friend Herman St. Aimie, who fought with the victim, said that when the victim was clinging to his back he felt something hard that "could have been a gun." (Ex. B-2 at 447.) On redirect, the prosecutor asked St. Aimie a series of questions about his familiarity with various guns. St Aimie answered "yes" to questions whether he was "familiar" with .22 rifles and pistols, 12 gauge shotguns, .32's, 20 gauge shotguns, .357 pistols, 9 millimeter pistols, .44 pistols, Mac 10's, AK 47's, and Uzi's. (Id. at 462-64.) The court denied defense objections to this line of questioning. Petitioner conceded in state court that this evidence could not have been prejudicial in itself (Ex. C-4 at 14), and certainly any error in allowing it was not sufficient to render the entire trial fundamentally unfair. This claim is without merit.

---

[3] The court of appeal held that the trial court did not abuse its discretion in allowing the movie to be shown, because it was relevant to Petitioner's state of mind when he shot the victim and any prejudice from it was mitigated by the limiting instruction. (Ex. C-4 at 6-9.)

### 5. Gang Expert

Petitioner contends that some of the gang expert's answers should not have been admitted because they invaded the province of the jury and were not the proper subject of expert testimony. The court of appeal held that "invades the province of the jury" is not a proper claim of error, being "a mere bit of empty rhetoric," see People v. McDonald, 37 Cal. 3d 351, 370 (1984), and that the answers would have been helpful to the jury and thus were admissible. (Ex. C-4 at 11-13.)

This is purely a state law claim and cannot be the basis for federal habeas relief. See Estelle, 502 U.S. at 67-68. And in any event, there clearly was a permissible inference the jury could make from the evidence, namely that gang members had a motive to attack each other, so admission of it could not have been fundamentally unfair. See Jammal, 926 F.2d at 920 (only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process).

### D. Prosecutorial Misconduct

In closing, the prosecutor read the lyrics of a rap song that was in "Colors." The claim that this was prosecutorial misconduct was raised in state law terms on direct appeal. The court of appeal rejected it because state law allows a prosecutor to read in closing from items admitted into evidence. (Ex. C-4 at 9.)

Prosecutorial misconduct is cognizable in federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. Darden v. Wainwright, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Id..

Here, the lyrics had been admitted into evidence and heard by the jury. Although the prosecutor's use of them was undoubtedly inflammatory, it could not have rendered the entire trial fundamentally unfair. This claim is without merit.[4]

---

[4] Although this claim is unexhausted, the court may deny it on the merits. See 28 U.S.C. § 2254(b)(2).

**CERTIFICATE OF APPEALABILITY**

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. For the reasons set out in the discussion above, Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right [or] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus and a COA are DENIED.

DATED: May 19, 2011

EDWARD J. DAVILA
United States District Judge

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
N:\Pro - Se & Death Penalty\May 2011\99-21067Queen21067_deny.gaw.wpd 14

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

QUEEN, ET AL,

        Plaintiff,

  v.

NEWLAND,

        Defendant.

Case Number: CV99-21067 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 20, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Charles Vaney Queen E-41052
CSAT/Corcoran State Prison
P. O. Box 5248
Corcoran, Ca 93212

Dated: May 20, 2011

        Richard W. Wieking, Clerk
        /s/ By: Elizabeth Garcia, Deputy Clerk

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
N:\Pro - Se & Death Penalty\May 2011\99-21067Queen21067_deny.gaw.wpd
15